Argued and submitted March 7, 1997, certified questions answered
January 23, 1998

Debbie FOLTZ,
*Plaintiff,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
an Illinois corporation,
California Institute of Medical Research
and Technology, Inc.,
dba Comprehensive Medical Review,
and Ralph Householder,
*Defendants.*

(USDC Civil 94-6293-HO; SC S43426)

952 P2d 1012

Kim E. Hoyt, and William D. Brandt, of Ferder, Brandt, Casebeer, Cooper, Hoyt, & French, LLP, Salem, and Daniel J. Gatti and David L. Kramer, of Gatti, Gatti, Maier, Krueger & Associates, Salem, filed the brief for plaintiff. Kim E. Hoyt and Mark E. Griffin, Portland, argued the cause for plaintiff.

I. Franklin Hunsaker, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, P.C., Portland, argued the cause for defendants State Farm Mutual Automobile Insurance Company. With him on the briefs were Douglas G. Houser and Stuart D. Jones, and Ralph C. Spooner, of Spooner & Much, P.C., Salem.

Bruce E. Smith, of Gleaves, Swearingen, Larsen, Potter, Scott & Smith, LLP, Eugene, argued the cause and filed the brief for defendant California Institute of Medical Research and Technology, Inc.

Douglas G. Schaller and Kelly M. Hagan, of Johnson, Clifton, Larson & Corson, P.C., Eugene, filed a brief *amicus curiae* on behalf of Oregon Trial Lawyers Association.

VAN HOOMISSEN, J.

Fadeley, J., dissented and filed an opinion.

## VAN HOOMISSEN, J.

This case is before the court on certification of questions of Oregon law asked by the United States District Court for the District of Oregon pursuant to ORS 28.200 *et seq.* (1995).

We take the following facts from the district court's order:

"Plaintiff was insured by defendant State Farm Mutual Automobile Insurance Company (State Farm) at the time her son was allegedly injured in an automobile accident. Plaintiff sought reimbursement for her son's medical treatment under the Personal Injury Payment (PIP) provisions of her insurance policy issued in Oregon by defendant State Farm.

"ORS 742.524(1)(a) requires that an automobile insurance carrier provide a minimum of $10,000 coverage for reasonable and necessary expenses for medical treatment required as a result of injuries sustained in an automobile accident.

"Defendant State Farm submitted the medical records of plaintiff's son to defendant California Institute of Medical Research & Technology, Inc., doing business as Comprehensive Medical Review (CMR) for a review of the reasonableness and necessity of the treatment provided. Thereafter, State Farm reduced or denied benefits for treatment rendered to plaintiff's son.

"Following the denial or reduction of benefits, plaintiff requested arbitration. Defendants contend arbitration was commenced but that plaintiff's counsel withdrew. Plaintiff contends arbitration never commenced because the parties could not agree on the scope of arbitrable issues and could not agree as to the scope of discovery within the arbitration.

"Plaintiff then initiated the instant actions.[1] Plaintiff's complaint alleges a conspiracy between State Farm and CMR to commit fraud by knowingly preparing false and

---

[1] Plaintiff's original complaint alleged claims for fraud and intentional interference with contractual relations. Plaintiff's First Amended Complaint alleges claims for negligence, fraud, conspiracy to commit fraud, negligent misrepresentation, breach of duty of good faith and fair dealing, and breach of contract.

misleading reports indicating that medical treatment provided to plaintiff's son was neither reasonable nor necessary when, allegedly, it was. Plaintiff alleges she has been damaged as a result of this alleged fraud.

"Plaintiff contends that she should be able to proceed against defendants in court without first arbitrating the underlying PIP dispute. Plaintiff contends ORS 742.520(6), in combination with ORS 742.522, violates plaintiff's right to a jury trial in contravention of the guarantees provided by Article I, section 17, of the Oregon Constitution. * * *

"Defendant State Farm contends that before plaintiff can maintain the instant action, she must first arbitrate the denial or reduction in amount of PIP benefits in accordance with ORS 742.520(6). Defendant State Farm further contends that until such time as the mandatory arbitration has been completed and defendant State Farm has refused to pay the resulting arbitration award, if any, plaintiff has not sustained any damages that would entitled her to pursue the instant action * * *."

Defendants moved to dismiss plaintiff's action, arguing that plaintiff is required to arbitrate the reduction or the denial of PIP benefits. In considering that motion, the district court certified three questions to this court. We accepted certification of those questions. ORS 28.200; *see generally Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 811 P2d 627 (1991) (discussing factors court considers in exercising discretion to accept certified questions).

ORS 742.520(6) provides:

"Disputes between insurers and beneficiaries about the amount of personal injury protection benefits, or about the denial of personal injury protection benefits, shall be decided by arbitration except that if all requirements for bringing an action in the small claims department of a justice or district court are met, the insured may elect to file such an action rather than submitting the claim to arbitration."[2]

---

[2] ORS 742.520(6) was amended in 1997 to provide that disputes about PIP benefits shall be decided by arbitration "if mutually agreed to at the time of the dispute." Or Laws 1997, ch 808, § 3. However, because that amendment applies only to insurance policies issued or renewed on or after October 4, 1997, the effective date of the amendment, it does not affect the outcome in this case. Or Laws 1997, ch 808, § 11.

ORS 742.522(1) provides:

"Arbitration under ORS 742.520(6) is binding on the parties to the arbitration."

Defendants California Institute of Medical Research and Technology, Inc. (CMR), and Householder are neither "insurers" nor "beneficiaries." Therefore, ORS 742.520(6) does not apply to them. The certification order consequently focuses on State Farm's motion to dismiss.[3]

### 1. The first certified question:

"Does ORS 742.520(6), in combination with ORS 742.522, or other related statutes, require the parties to arbitrate the reduction in amount or denial of PIP benefits when the underlying claims are that the reduction or denial was based on fraud, negligence and breach of contractual duties?"

■ State Farm argues that plaintiff is required under ORS 742.520(6) to submit to arbitration before she can pursue litigation. Plaintiff responds that, because her complaint alleges that the arbitration procedure itself is part of defendants' scheme to defraud her of PIP benefits, she is not required to arbitrate.[4]

■ The first certified question raises an issue of statutory construction, to which we apply the template set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Our task is to discern the intent of the legislature. ORS 174.020; *PGE*, 317 Or at 610. At the first level of analysis, we examine both the text and the context of the statute, employing rules of construction that bear directly

---

[3] The district court's certification order states:

"Neither plaintiff-insured nor defendant State Farm has argued that arbitration is compelled by the insurance contract."

As the case has been presented to us by the district court's order, the operative assumption is that the provisions of the parties' contract are not relevant. Thus, any contract issues must be raised and argued in the district court.

[4] Plaintiff asserts that, although not all her damages are the result of State Farm's reduction or denial of PIP benefits, the amount of PIP benefits to which she is entitled comprises part of her damages.

on how to read the text and context. *Id.* at 610-11. If the legislature's intent is clear from the inquiry into text and context, further inquiry is unnecessary. We conclude that ORS 742.520(6) is clear at the first level of analysis.

ORS 742.520(6) provides that disputes (except small claims) between insurers and beneficiaries about the "amount" or the "denial" of PIP benefits "shall be decided by arbitration." The term "disputes" is unqualified. Therefore, it covers *all* disputes that arise from any source or theory, including fraud or negligence. This case involves a "dispute" over the "amount" of PIP benefits. There is nothing unique about fraud, negligence, or breach of contract claims that suggests that an arbitrator cannot resolve disputes in which such claims are made. We conclude, therefore, that ORS 742.520(6) requires plaintiff to submit to arbitration all of her claims identified in the district court's question.

We answer the first certified question "YES."

2. The second certified question:

"If the answer to question No. 1 is 'yes,' can Plaintiff establish damages on her claims without having first arbitrated the reduction in amount or denial of PIP benefits?"

■ The second question appears to be intended to present the mirror image of the first question, *i.e.*, to ask whether, as a practical matter, plaintiff's claim for damages for denial of PIP benefits is in a posture to proceed to a judgment for damages before arbitration occurs. As our answer to the first question makes clear, it is not. Because plaintiff rests her fraud claim on an alleged "wrongful scheme" by defendants to reduce or deny PIP benefits contractually due to her, she cannot recover a judgment for her damages without first establishing that PIP benefits *were due* to her. The existence and amount of any damages for fraud requires proof that PIP benefits were due and were denied. Therefore, before she proceeds to trial on her claim and seeks a judgment for her damages, plaintiff first must arbitrate her contractual right to, and the reduction or denial of, PIP benefits.[5]

---

[5] ORS 742.520(6) and ORS 742.522(1) impose no impediment to plaintiff's possible pursuit of arbitration on her claims during the pendency of her action in court.

We answer the second certified question "NO."

3.  The third certified question:

"If the answer to question number 1 is 'yes' and the answer to question 2 is 'no,' does ORS 742.520(6), in combination with ORS 742.522, or other related statutes, violate a plaintiff-insured's right to a jury trial on her claims based on fraud, negligence and breach of contractual duties under Article I, section 17, of the Oregon Constitution, where the plaintiff-insured and defendant-insurer have not yet arbitrated their PIP dispute and the amount of the claims is not within the jurisdiction of the small claims court?"

◼  Article I, section 17, of the Oregon Constitution, provides:

"In all civil cases the right of Trial by Jury shall remain inviolate."

Because ORS 742.522(1) makes mandatory arbitration under ORS 742.520(6) binding on the parties, that statute takes away something that Article I, section 17, guarantees plaintiff, *i.e.*, a jury trial.

In *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 744 P2d 992 (1987), the insured brought an action on a fire insurance policy. ORS 743.648 set forth a permissive appraisal process in the event of a dispute over the amount of the loss. Oregon law required that the appraisal process be included in all fire insurance policies. The issue was whether ORS 743.648 violated Article I, section 17, by depriving the insured of the right to a jury trial. Although the appraisal process was permissive to the demanding party, once invoked by the demanding party the process became mandatory for the nondemanding party. *Id.* at 298.

One of the parties in *Molodyh* demanded an appraisal.[6] The plaintiff argued that the appraiser's award could not bind him without violating Article I, section 17. This court agreed with the plaintiff, holding that, if the appraiser's award is binding on the nondemanding party, the statute "runs afoul of Article I, section 17." *Id.* at 299. To save

---

[6] The record in *Molodyh* was not clear as to which party had demanded the appraisal. 304 Or at 292 n 3.

ORS 743.648, this court construed the statute to be nonbinding in respect of the nondemanding party. *Ibid.*

In this case, the district court states:

> "Following the denial or reduction of benefits, plaintiff requested arbitration. Defendants contend arbitration was commenced but that plaintiff's counsel withdrew. Plaintiff contends arbitration never commenced because the parties could not agree on the scope of arbitrable issues and could not agree as to the scope of discovery within the arbitration."

ORS 742.520(6) makes arbitration mandatory (except for small claims). Because the appraisal process in *Molodyh* was permissive, *Molodyh* is factually distinguishable from this case. We conclude that whether plaintiff voluntarily requested arbitration in this context is not dispositive of the constitutionality of ORS 742.522(1), because plaintiff was required to arbitrate by ORS 742.520(6). Any award made as a result of the mandatory arbitration under ORS 742.520(6) is not binding on plaintiff.[7]

■ We proceed to consider whether ORS 742.522(1) can be severed from ORS 742.520(6), thereby leaving the requirement of mandatory arbitration in place. ORS 174.040 provides:

> "It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless:

> "(1)  The statute provides otherwise;

> "(2)  The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or

---

[7] In reality, the issue whether the statutory scheme violates plaintiff's state constitutional right to a jury trial would be raised after arbitration only if a court were asked to dismiss her claims for the reason that, under ORS 742.522(1), the arbitration award was binding. In this case, we note that defendants do not argue that any arbitrator's award will be binding on plaintiff. Defendants argue only that plaintiff must arbitrate before litigating, and we agree with that proposition.

"(3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

Applying the analysis of ORS 174.040, we conclude that ORS 742.520(6) can be saved. First, no provision in the PIP statutes provides otherwise. Second, ORS 742.520(6) is not so essentially and inseparably connected with and dependent on ORS 742.522(1) that it is apparent that the former would not have been enacted without the latter. The best evidence of the independence of these two provisions is the fact that the mandatory arbitration of disputes over the amount or denial of PIP benefits predated the requirement that such arbitration be binding on the parties. *See* ORS 743.800(6) (1985) (requiring arbitration; no provision that the arbitration was binding); Or Laws 1987, ch 588, § 5 (adding binding arbitration provision). Third, standing alone, ORS 742.520(6) is neither incomplete nor incapable of being executed in accordance with legislative intent.

We answer the third certified question "YES."

In summary, we hold that, standing alone, ORS 742.520(6) (1995) does not violate Article I, section 17. We further hold that, in this context, ORS 742.522(1) (1995) violates Article I, section 17, of the Oregon Constitution.

Certified questions answered.

**FADELEY, J.,** dissenting.

I respectfully dissent.

I dissent from the answers given by the majority for use by the federal court. I would hold that the statute does indeed violate the right to a jury trial.

Simply put, the majority holds that the Oregon legislature has the power to prevent a fraud claim (or any tort claim) from being considered by a jury until after the claimant's legal entitlement to any recovery at all, together with the degree or amount of such recovery for injury, is submitted to arbitration and that arbitration is completed.

Article I, section 17, of the Oregon Constitution provides:

"In *all* civil cases the *right* of Trial by Jury shall remain inviolate." (Emphasis added.)

The majority violates that constitutional right in tort cases, in my view, by placing an inescapable hurdle involving cost and substantial delay in front of, and as a precondition to, exercise of the "right [that] shall remain inviolate."

"Inviolate" is strong, direct language. Telling one who alleges injuries from tort that she or he has no claim to a jury trial until after an arbitration proceeding is concluded does not hold inviolate the right that the pioneers intended to guarantee to themselves and posterity when the state constitution went into effect in 1859.

Leaving aside the need to preserve inviolate the historic and constitutional right to trial by jury, I also believe that the majority leaves the law about insurer-insured arbitrations potentially a mess. Heretofore this court has granted summary judgment to the insurer or its stand-in but has done so saying that the "claimant * * * cannot be required to arbitrate the claim." *Carrier v. Hicks*, 316 Or 341, 352, 851 P2d 581 (1993). Here, the majority says to the contrary: Claimant must engage in a complete arbitration or there is no jury and no jury trial. 326 Or at 300, 303.[1]

I first warned of the loss of a jury trial in dissents with Justice Unis in *Carrier* and *Mazorol v. Coats*, 316 Or 367, 371-72, 852 P2d 178 (1993).

In the present case the majority supports its decision by the following sentence:

"The existence and amount of any damages for fraud requires proof that PIP benefits were due and were denied. Therefore, before she proceeds to trial on her claim and

---

[1] Perhaps I misjudge the majority and they are overruling *Carrier* and *Mazorol* by citing only to a quite different predecessor, *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 744 P2d 992 (1987). *Molodyh*, which in any event has nothing to do with fraud or negligence, is in reality authority requiring a result opposite to the majority result, even as to a simple contract matter. 304 Or at 300.

*Molodyh* also accurately recounts the kind of cases in which a jury trial has been required in Oregon for over a century. 304 Or at 295-97. Under *Molodyh* and all of the cases there cited, this case would go to a jury without a costly, delaying hurdle being placed in the way.

seeks a judgment for her damages, plaintiff first must arbitrate her contractual right to, and the reduction or denial of, PIP benefits." 326 Or at 300.

Significantly, not even a bare citation to a law review, let alone a case or treatise, accompanies that statement of what is required for actionable fraud—that a contract must first be enforced before conduct in some way related to the contract effectively may be actionable in fraud. To see that what the majority holds is not so, one need go no further than to check the definitions of "actionable fraud" or "fraud" in Black's Law Dictionary. Moreover, the only substantive case cited by the majority is not about fraud.